IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| I&I HAIR CORPORATION, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | Civil Action No. 3:20-cv-02179-M |
| BEAUTY PLUS TRADING CO., INC., et al., | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Beauty Plus Trading Co., Inc.'s Renewed Motion for Judgment as a Matter of Law and Motion for New Trial (ECF No. 277) and Plaintiff's Motion for Entry of Findings of Fact and Conclusions of Law (ECF No. 276). On November 30, 2023, the Court heard argument on the Motions.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial. The Court **DENIES** Plaintiff's Motion for Entry of Findings of Fact and Conclusions of Law directed to the issues of enhanced damages and attorneys' fees under the Lanham Act.[1] The Court will enter a Judgment consistent with this Opinion.

Plaintiff's Motions for Leave to File Additional Pages (ECF Nos. 294, 297) are **DENIED.** The page limits set forth in Local Civil Rule 7.2 are mandatory, and litigants cannot avoid maximum length requirements merely by seeking leave on every filing, particularly when

---

[1] The Court previously severed and transferred Plaintiff's claim for violation of the Amended Consent Judgment—and Plaintiff's request for entry of Findings of Fact and Conclusions of Law in connection with that claim—to *I&I Hair Corp. v. Beauty Plus Trading Co., Inc*., No. 3:18-cv-03254-M. ECF No. 308. Thus, this Order addresses the remainder of the relief requested by Plaintiff in its Motion.

1

Plaintiff's request for leave is opposed or does not comply with the certificate of conference requirement under the Local Rules.[2] *E.g.*, ECF No. 294 at 2. Moreover, the Court finds that additional pages are not warranted. *See* L.R. 7.2(c) ("Permission to file a brief in excess of these page limitations will be granted by the presiding judge only for extraordinary and compelling reasons.").

## I.  BACKGROUND

Plaintiff I&I Hair Corp. ("I&I") sells hair products. Since October 10, 2017, Plaintiff has been the registered owner of "EZBRAID"—a standard character, or word, trademark—that Plaintiff uses pre-stretched, synthetic braids. Defendant Beauty Plus Trading Co., Inc. ("Beauty Plus") sells hair extensions and wigs. Beauty Plus sells hair extensions to Defendant Hair Plus Trading Co., Inc. ("Hair Plus") for a markup. Beauty Plus and Hair Plus are not related entities, although there is a connection between them because the companies' owners are married, and Hair Plus sells Beauty Plus's products.

In 2018, I&I filed suit against Beauty Plus, alleging claims of trademark infringement, false designation of origin, and unfair competition related to Defendant's use of the EZBRAID mark. *See I&I Hair Corp. v. Beauty Plus Trading Co., Inc.*, No. 3:18-cv-03254-M (N.D. Tex. Dec. 11, 2018). The parties ultimately settled, executing a settlement agreement dated April 22, 2019. ECF No. 1-2 ("Settlement Agreement"). The Settlement Agreement was then incorporated into a consent judgment and permanent injunction, which was subsequently amended on September 11, 2019. ECF No. 1-6 ("Amended Consent Judgment"). Paragraph 10 of the Amended Consent Judgment permanently enjoins and restrains Beauty Plus, and any

---

[2] The Court notes that it has previously admonished Plaintiff on this very issue. ECF No. 292 at 12–13.

company directly or indirectly related to Beauty Plus or Beauty Plus's owner, Chang Moo Lee, from certain conduct, including from directly or indirectly:

> (a) manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise, or promote any goods or services bearing the mark EZBRAID or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's EZBRAID® mark;
>
> (b) engaging in any activity that infringes Plaintiff's rights in its EZBRAID® mark.
>
> . . .

Amended Consent Judgment ¶ 10.

On August 17, 2020, I&I filed this action against Beauty Plus and Hair Plus, asserting five causes of action against both Defendants based on use of the "EZ PRE-STRETCHED BRAID" mark: (1) federal trademark infringement, (2) trademark dilution under Texas Business & Commerce Code § 16.103, (3) unfair competition, (4) breach of the Amended Consent Judgment, and (5) breach of the Settlement Agreement. ECF No. 1. The Court subsequently dismissed I&I's claim against Hair Plus for breach of the Settlement Agreement, on the grounds that Hair Plus was not a party to the Settlement Agreement, undertook no duties under it, and is not a third-party obligor or beneficiary under it. ECF No. 28 at 5.

At summary judgment, the Court held that, despite not being a party to the previous lawsuit, Hair Plus is bound to the Amended Consent Judgment as follows:

> Pursuant to ¶ 10 of the Amended Consent Judgment, Defendant Hair Plus Trading Co., Inc. is also bound by ¶ 10 of the Amended Consent Judgment based on the relationship of Chang Moo Lee, the owner of Defendant Beauty Plus Trading Co., Inc., to the owners of Hair Plus, and based on Beauty Plus acting as principal of Hair Plus.

ECF 184 at 2.

Prior to trial, I&I dropped its federal trademark infringement claim against Hair Plus and its claims against both Defendants for trademark dilution. *See* ECF No. 257 ("Amended Joint Pretrial Order") ¶¶ (A)(1)–(2).

The case proceeded to trial in July 2023. During trial, I&I dropped its claim for unfair competition against Hair Plus, and the Court determined that I&I's claim for breach of the Amended Consent Judgment presented an issue for the Court, not the jury. As a result, only three claims were sent to the jury: I&I's claims against Beauty Plus for federal trademark infringement, common law unfair competition, and breach of the Settlement Agreement, all arising out of Beauty Plus's use of the EZ PRE-STRETCHED BRAID mark. ECF No. 272.

The jury found Beauty Plus liable on all three claims. As part of its decision, the jury expressly found that I&I had proven by a preponderance of the evidence that Beauty Plus had used the EZBRAID mark, or a confusingly similar variant thereof, that was likely to confuse a purchaser of goods bearing the mark. *Id.* The jury awarded $69,153.00 in disgorgement damages arising from Beauty Plus's infringement of the EZBRAID mark; $1,159,481.00 in lost profit damages arising out of Beauty Plus's liability for unfair competition; and $1,310,368.00 to compensate I&I for Beauty Plus's breach of the Settlement Agreement. *Id.*

Beauty Plus now moves for judgment as a matter of law. Plaintiff moves for entry of Findings of Fact and Conclusions of Law in connection with its trademark infringement claim.

## II.   LEGAL STANDARD

A motion for judgment as a matter of law may be granted if a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury did not have a legally sufficient evidentiary basis to find for the party on that issue. Fed. R. Civ. P. 50(a). A district court "must deny a motion for judgment as a matter of law unless the facts and inferences point

4

so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisen v. I'm Ready Prod., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012).

A court may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The Court has discretion to grant a new trial "when it is necessary to do so 'to prevent an injustice.'" *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995) (quoting *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993)). Exemplary grounds for a new trial are: (1) the verdict is against the weight of the evidence, (2) the damages awarded are excessive, (3) the trial was unfair, or (4) prejudicial error was committed in its course. *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). The court must affirm a jury's verdict unless, in viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of the party moving for a new trial that reasonable jurors could not have arrived at a contrary conclusion. *Pryor v. Trane Co.*, 138 F.3d 1024, 1026 (5th Cir. 1998).

### III. ANALYSIS

#### A. Defendant Beauty Plus's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial

Beauty Plus moves for judgment as a matter of law, and alternatively for a new trial, on the grounds that the verdict is against the weight of the evidence, the trial was unfair, and there was prejudicial error during trial. Specifically, Beauty Plus argues that: (1) the jury's damages award for unfair competition and breach of the Settlement Agreement are unsupported and speculative; and (2) the jury's verdict regarding likelihood of confusion as to EZ PRE-STRETCHED BRAID must be reconsidered.

5

1. <u>Damages</u>

Beauty Plus argues that there is no evidentiary support for the jury's damages awards for I&I's claims for unfair competition and breach of contract.

   a. *Unfair Competition*

Regarding I&I's claim for unfair competition, the jury awarded I&I $1,159,481.00 in lost profit damages relating to Beauty Plus's unlawful conduct that resulted in unfair competition, namely infringing on I&I's EZBRAID trademark.[3] Texas state law requires that a damages award based on a plaintiff's lost profits must be based on objective, cognizable facts, as summarized by the Fifth Circuit:

> Texas law requires "[a] party seeking to recover lost profits [to] prove the loss through competent evidence with reasonable certainty." *Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 206–207 (Tex. App.—Fort Worth 2004, pet. denied) (citing *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994)). Though this test is "flexible," any "opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id*. (citing *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994); *Szczepanik*, 883 S.W.2d at 649). Failure to comply carries harsh consequences in Texas: "If no evidence is presented to prove lost profits with reasonable certainty, the trial court must render a take-nothing judgment as to lost-profit damages." *Barton v. Resort Dev. Latin Am., Inc.*, 413 S.W.3d 232, 236 (Tex. App.—Dallas 2013, pet. denied) (citing *Tex. Instruments*, 877 S.W.2d at 281).

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 779 (5th Cir. 2017).

Beauty Plus argues that there was no evidence presented at trial about the lost profits I&I suffered as a result of Beauty Plus's trademark infringement, and instead, I&I simply asked the

---

[3] Specifically, regarding unfair competition, the jury was instructed as follows: "If you have found that Beauty Plus has engaged in unfair competition, then I&I is entitled to recover damages. The measure of damages in an action for unfair competition is I&I's lost profits. It is not necessary to prove lost profits with mathematical exactness; reasonable certainty will suffice. When calculating lost profits, I&I is entitled to recover damages only for the period beginning September 13, 2019, and thereafter." ECF No. 270 at 13.

jury to assume that all of Defendants' profits would have otherwise been sales to I&I, and thus constitute lost profits.

The Court agrees that the trial record contains no evidence of I&I's lost profits, let alone competent evidence in the form of objective facts, figures, or data through which the jury could calculate I&I's lost profits with reasonable certainty. *See Motion Med. Techs.*, 875 F.3d at 779. Dr. Hakala, I&I's damages expert, did not testify about lost profits. The $1,159,481.00 figure, which the jury awarded, exactly matches the disgorgement figure for both Defendants—*i.e.*, profits earned by Beauty Plus *and* Hair Plus—about which Defendants' damages expert, Dr. Vanderhart, testified. *See* Tr. Vol. 4-D (Sealed) (ECF No. 306) at 8–9. There is no evidence from which the jury could have concluded that I&I would have made every sale that Defendants made, such that I&I's lost profits damages exactly match Defendants' own profits. On the contrary, evidence was presented indicating that there are many other competitors in the pre-stretched braiding hair market besides I&I and Defendants; therefore, there is no basis to assume that Defendants' sales would have otherwise gone to I&I. *E.g.*, Tr. Vol. 3 (ECF No. 302) at 52. Moreover, I&I presented no evidence or legal basis as to why the jury could consider profits enjoyed by Hair Plus when evaluating the lost profits suffered by I&I as a result of Beauty Plus's unfair competition, particularly given that I&I dismissed its unfair competition claim against Hair Plus with prejudice during trial.

During closing arguments, I&I's counsel specifically asked the jury to use Defendants' sales figures as a basis for calculating I&I's lost profits as damages for Beauty Plus's unfair competition. *See* Tr. Vol. 5 (ECF No. 307) at 43–45 (I&I's closing argument) ("I would submit to you that, had it not been for Beauty Plus's misuse of EZBRAID and EZ PRE-STRETCHED BRAID through its sister company, those are sales that I&I would have made. I&I would have

made those sales."). In doing so, I&I's counsel invited the jury to make additional error, namely by suggesting that the jury should apply I&I's profit margins to Defendants' sales figures to calculate Plaintiff's gross profits.[4] *Id.*

Even if there were evidentiary support in the record for such a calculation—and there is not—Texas law is clear that *net* profits must be used to calculate lost profits, not *gross* profits, and that the calculation of net profits must account for all expenses in carrying out the business, not just the incremental costs of selling a particular product. *Motion Med. Techs., L.L.C.*, 875 F.3d at 779. Put differently, had I&I actually provided evidence of its own lost revenues (and it did not), I&I provided no evidence of its business expenses or any overhead costs from which its net profits could be calculated, further rendering any lost profits award impermissibly speculative. *See id.* ("Texas law is clear that the plaintiff, not the defendant, must prove net profits—a figure correctly measured by 'deducting from [the plaintiff's] total receipts all the expenses incurred in carrying on the business.'" (quoting *Atlas Copco Tools, Inc. v. Air Power Tool & Hoist, Inc.*, 131 S.W.3d 203, 209 (Tex. App.—Fort Worth 2004, pet. denied)). During the hearing on the parties' post-trial motions, I&I conceded that no such evidence of its overhead expenses was presented to the jury, rendering any lost profits calculation it proffered further deficient.[5] ECF No. 292 at 15.

---

[4] The Court further notes that the "profit margin" percentage—38%—proffered by I&I's counsel to the jury was not testified to by any witness, but instead appears to have been the result of arithmetic performed by I&I's counsel. *See* ECF No. 292 at 17–18. Such statements from counsel do not constitute evidence and cannot serve as the basis for a lost profits calculation. *See, e.g., Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 685 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[5] The Court notes that after the November 30, 2023, hearing on the parties' post-trial motions, I&I submitted a proposed "Additional Findings of Fact and Conclusions of Law," which contains proposed "findings" relating to I&I's lost profits calculation, including additional attorney arithmetic, seemingly in an attempt to bolster I&I's otherwise deficient evidentiary showing at trial. *See, e.g.*, ECF No. 295 ¶¶ 99–100 ("This same evidence supports the arithmetic conclusion that the jury determined that Plaintiffs would have made about 98.7% of the sales that Defendant did. . . . As the preadmitted evidence by itself provides some basis for the jury's reasonable inference in calculating Plaintiff's lost profits without relying on mere speculation, the Court defers to the jury on its determination, [and] adopts same . . . ."). However, the issue of damages, relevant to both the unfair competition and breach of Settlement Agreement claims, is indisputably a question of fact for the jury to resolve, and the Court refuses to grant I&I a second

I&I provides no meaningful response to Beauty Plus's Renewed Motion for Judgment as a Matter of Law on this point. As a result, because the jury's lost profits award is based on speculation and conjecture, namely Defendants' disgorgement figures rather than I&I's own revenues, it falls short of the legal requirement that lost profits be proven by competent evidence with reasonable certainty. *Motion Med. Techs., L.L.C.*, 875 F.3d at 779. The Court thus **GRANTS** Beauty Plus's Renewed Motion for Judgment as a Matter of Law on the jury's award on this issue, and will enter judgment that I&I take nothing from Beauty Plus on its claim for unfair competition.

### b. Breach of the Settlement Agreement

The jury awarded $1,310,368.00 to compensate I&I for Beauty Plus's breach of the Settlement Agreement. Texas law requires a plaintiff seeking recovery for breach of contract to establish that its damages are "the natural, probable, and foreseeable consequence of the defendant's conduct." *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). The jury was further instructed that "I&I may not recover damages for breach if those damages are remote, contingent, speculative, or conjectural." ECF No. 270 at 14. Beauty Plus argues that there is no evidence to support the jury's damages award and thus it is speculative, justifying judgment as a matter of law.

The Court agrees. The jury's damages award for breach of the Settlement Agreement is problematic in two ways. First, it has no evidentiary basis or support in the record. No witness testified to the $1,310,368.00 figure, and it is not tethered to any evidence, testimony, or calculation regarding damage that I&I suffered as a result of Beauty Plus breaching the

---

bite of the apple to rectify its own evidentiary shortcomings through supplemental factfinding by the Court. In addition, I&I makes several new arguments for the first time in its "Additional Findings of Fact and Conclusions of Law," which the Court will not consider in the context of Beauty Plus's Renewed Motion for Judgment as a Matter of Law.

9

Settlement Agreement. Thus, the award appears to have been arrived at by the jury without record support.

In responding to Beauty Plus's Motion, I&I does not even attempt to explain how the jury may have reached its award, and instead points only to two stipulations that the Court read to the jury at the beginning of the case:

> Ten: Subsequent to the entry of the Amended Consent Judgment and Permanent Injunction, Beauty Plus has sold goods bearing the mark "EZ PRE-STRETCHED BRAID" to Hair Plus, and charged Hair Plus a markup on same.
>
> [Eleven]: Subsequent to entry of the Amended Consent Judgment and Permanent Injunction, defendants have generated revenue of at least $1,129,500.00 in their sale of goods marked "EZ PRE-STRETCHED BRAID."

Tr. Vol. 1 (ECF No. 299) at 95.

I&I does not explain how these stipulations provide sufficient evidentiary support for the jury's damages award. Even if the jury used Defendants' revenues as a starting point for its award—for which, as will be discussed, there is no basis legally or in the record to do so—I&I does not point to any evidence, testimony, or theory that accounts for the approximately $180,000 difference between Defendants' stipulated revenues and the jury's damages award, rendering it unsupported by the evidence. Put differently, I&I has made no effort to show that I&I suffered this amount of financial injury as a result of Beauty Plus's breach, or that such damages were the natural, probable, and foreseeable consequence of Beauty Plus's conduct. *See Mead*, 615 S.W.2d at 687.

The lack of evidentiary support dovetails into the second fundamental problem with the jury's damages award, namely that there appears to be no legal grounds for using revenue based, at least in part, on Hair Plus's sales as a basis to calculate I&I's damages from Beauty Plus's breach of the Settlement Agreement. As with its unfair competition claim, I&I's counsel argued during closing arguments that the jury should base its award for Beauty Plus's breach of the

Settlement Agreement on Defendants' revenues as a measure of I&I's lost profits, adjusted by the same "gross profit" margin I&I's counsel proposed in conjunction with the unfair competition claim. Tr. Vol. 5 at 45–47 ("I want you to answer, yes, they did breach that settlement agreement. . . . And that harmed I&I the exact same way, because they lost out on these units, times this profit margin, which yields these dollars right here."); *see also supra* note 4.

As discussed previously, I&I's reliance on Defendants' revenues as a proxy for its own lost profits is improper under Texas law, and to the extent the jury's verdict is based on such argument, it must be set aside on those grounds alone. Arguments to the jury by I&I's counsel—that Beauty Plus went "through the back door and us[ed] their sister company"—do not constitute evidence and are insufficient to establish that Defendants' sales constitute I&I's contract damages suffered as a result of Beauty Plus's breach of the Settlement Agreement. *See id.* At minimum, I&I has not established that it is entitled to seek *Hair Plus's* revenues as damages for Beauty Plus's breach. For instance, I&I does not argue that Hair Plus's sales constitute consequential damages of Beauty Plus's breach, or that Beauty Plus is vicariously liable for Hair Plus's sales of goods bearing the EZ PRE-STRETCHED BRAID mark. The Court has held that Hair Plus is bound by ¶ 10 of the Amended Consent Judgment, but has never held—and I&I has not established—that Hair Plus is jointly and severally liable for Beauty Plus's breach of the Settlement Agreement, or that Hair Plus's sales should be considered for calculating I&I's contract damages based on Beauty Plus's breach. On the contrary, the Court previously held that Hair Plus is not a third-party beneficiary of the Settlement Agreement, and undertook no duties relating to that contract.

In sum, I&I presents no legal theory or evidence sufficient to uphold the jury's damages award for Beauty Plus's beach of the Settlement Agreement. The Court thus **GRANTS** Beauty Plus's Renewed Motion for Judgment as a Matter of Law on the jury's award on this issue, and will enter judgment that I&I take nothing from Beauty Plus on its claim for breach of the Settlement Agreement.

2. Likelihood of Confusion

Beauty Plus moves for judgment as a matter of law and/or a new trial on the trademark infringement claim on the grounds that no reasonable juror could return a verdict of likelihood of confusion based on the evidence presented at trial.

The Court instructed the jury that "[i]n deciding whether Beauty Plus's use of EZ PRE-STRETCHED BRAID creates a likelihood of confusion," the jury should consider the following factors: (1) strength or weakness of the plaintiff's mark; (2) similarity of plaintiff's and defendant's products; (3) similarity of plaintiff's and defendant's marks; (4) actual confusion; (5) defendant's intent; (6) marketing/advertising channels; (7) identity of retail outlets and purchasers; and (8) consumer's degree of care. ECF No. 270 at 8–9. The Fifth Circuit has characterized the "likelihood of confusion" factors as non-exhaustive, and recognized that a finding of likelihood of confusion need not be supported by a majority of them. *See Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1159 (5th Cir. 1982).

Beauty Plus argues that there is no evidence of five of the eight factors, focusing largely on statements made during I&I's closing arguments that Beauty Plus contends were prejudicial, inaccurate, or may have improperly influenced the jury to decide this question on improper grounds. Regarding the first factor challenged by Beauty Plus—strength or weakness of the mark—Beauty Plus contends that, during closing arguments, I&I's counsel improperly invited

12

the jury to conflate a mark's "strength" and "distinctiveness" by emphasizing Beauty Plus's stipulation that the EZBRAID mark is distinctive. Tr. Vol. 5 at 32–33. However, the jury instructions make clear that distinctiveness is part of the strength inquiry. ECF No. 270 at 10. The jury was thus free to weigh the stipulated distinctiveness of the mark against the other evidence going to strength and weakness, and I&I's argument was not so prejudicial or confusing so as to warrant a new trial.

Next, for the factor directed to the similarity of plaintiff's and defendant's marks, Beauty Plus argues that I&I's characterization of the infringing mark during closing arguments was confusing to the jury, because I&I argued that Beauty Plus had just inserted the word "PRE-STRETCHED" in between the words EZ and BRAID. For support, Beauty Plus points to its packaging, in which the words "EZ PRE-STRETCHED" appears on a different line than "BRAID," and testimony from Mr. Lee, Hair Plus's VP, when he referred to the mark as "EZ PRE-STRETCHED," *i.e.*, without the word "BRAID." *See* ECF No. 278 at 27; Tr. Vol. 3 at 49. To the extent Beauty Plus is arguing that the jury should have been comparing EZBRAID and EZ PRE-STRETCHED, and not EZ PRE-STRETCHED BRAID, when assessing the likelihood of confusion, that argument is waived; the jury instructions consistently identified EZ PRE-STRETCHED BRAID as the relevant mark when discussing the likelihood of confusion, without objection by Beauty Plus. *See, e.g.*, ECF No. 270 at 8; Tr. Vol. 4 (ECF No. 305) at 101–13. Moreover, the jury was free to consider all of these factors—including the placement of the words in the infringing mark and the inclusion or exclusion of certain words—when considering the similarity of the marks, and I&I arguing to that effect was not unduly prejudicial or unfair.

Beauty Plus next argues that I&I presented no evidence of any actual consumer confusion. However, as Beauty Plus admits, although evidence of actual confusion is the best

13

evidence of likelihood of confusion, it "is not necessary to a finding of likelihood of confusion." *Sueros Y Bebidas Rehidratantes, S.A. de D.V. v. Indus Enterprises, LLC*, No. CV H-22-1304, 2023 WL 5733841, at *7 (S.D. Tex. Sept. 5, 2023) (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)). Thus, the absence of any evidence of actual confusion is not dispositive, particularly as a finding of likelihood of confusion need not be supported by a majority of the factors. *Armco*, 693 F.3d at 1159. Beauty Plus also points to evidence indicating that two of the factors—Beauty Plus's intent, and a consumer's degree of care—weigh against a finding of likelihood of confusion, but the Court has reviewed the evidence and determines that it does not sufficiently weigh in favor of Beauty Plus's position so as to justify disturbing the jury's verdict on this issue.

In sum, the Court concludes that Beauty Plus has not shown that the evidence "points so strongly and so overwhelmingly in favor of one party that no reasonable juror could return a contrary verdict," and thus affirms the jury's verdict on likelihood of confusion. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005). Beauty Plus's Motion for Judgment as a Matter of Law on that issue is **DENIED**.

### B. I&I's Motion for Entry of Findings of Fact and Conclusions of Law

I&I moves for entry of Findings of Fact and Conclusions of Law as to additional remedies in connection with its trademark infringement claim against Beauty Plus. The jury determined that Beauty Plus infringed I&I's EZBRAID trademark, and awarded disgorgement of Beauty Plus's profits as damages. ECF No. 272. I&I now moves for entry of an order awarding attorneys' fees and enhanced trademark infringement damages under the Lanham Act. Because I&I dismissed its trademark infringement claim against Hair Plus with prejudice, any additional remedies it seeks in connection with its trademark claim are limited to Beauty Plus.

1. <u>Attorneys' Fees</u>

The relevant portion of the Lanham Act, 15 U.S.C. § 1117(a), provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Attorneys' fees under § 1117(a) are permitted if the defendant "maliciously, fraudulent, deliberately, or willfully" infringes the plaintiff's mark. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002). The prevailing plaintiff must show "a high degree of culpability," or "bad faith," by the defendant. *Id.* A district court normally should not find a case exceptional where the party presents what it in good faith believes may be a legitimate defense. *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 66 (5th Cir. 1992). "[A] fee award may be warranted either where the prevailing party stood out in terms of the strength of its litigating position or where the non-prevailing party litigated the case in an 'unreasonable manner.'" *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 (5th Cir. 2019). Plaintiff must establish the exceptional nature of the case by clear and convincing evidence. *Proctor &Gamble*, 280 F.3d at 526.

I&I contends that Beauty Plus acted willfully and in bad faith by continuing to infringe on I&I's trademark after entry of the Amended Consent Judgment, rendering the case exceptional and justifying an award of attorneys' fees. However, willfulness is a question of fact for the jury. *See, e.g.*, *Karr v. City of Beaumont, Tex.*, 950 F. Supp. 1317, 1325 (E.D. Tex. 1997) ("Willfulness is a fact issue for the jury."). I&I did not submit any jury instructions on willfulness, nor did it include a willfulness question on its proposed verdict form. *See* ECF No. 212. Similarly, I&I did not object to the jury charge or verdict on the lack of a willfulness question. *See* Tr. Vol. 4 at 101–13. Thus, there has been no finding of willfulness, and having

15

waived the issue at trial, I&I cannot now argue that this case is exceptional because Beauty Plus allegedly acted intentionally.

In the absence of a jury finding on willfulness, the Court considers the objective merits of the suit to determine whether this case is exceptional. *See Proctor & Gamble*, 280 F.3d at 527; *see also Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992) ("A jury finding of willfulness does not bind the trial court in determining whether this case is 'exceptional'; it may, however, serve as a guide."). Plaintiff argues that this case is exceptional because Beauty Plus acted in bad faith, pointing to the lengthy procedural history between the parties and contending that Beauty Plus tried to avoid infringement simply by adding "PRE-STRETCHED" in-between "EZ" and "BRAID." ECF No. 292 at 18.

In light of all the facts and circumstances, the full procedural record, the evidence presented at trial, and the objective merits of the suit, the Court concludes that I&I has not established by clear and convincing evidence that this case is exceptional. Beauty Plus presented a legitimate defense, including evidence in support of its position that use of EZ PRE-STRETCHED BRAID does not create a likelihood of confusion. This evidence included, *inter alia*, evidence of multiple other trademarks that incorporate "EZ," as indicative of the relative weakness of I&I's EZBRAID mark, and the lack of any evidence of actual confusion. In addition, Beauty Plus presented evidence, in the form of testimony from its Vice President, Mr. Hwang, indicating a lack of intent, namely that it believed that using EZ PRE-STRETCHED BRAID was not problematic because the Settlement Agreement between I&I and Beauty Plus only prohibited "all current and future use of 'EZ TEX' with the word 'BRAID,'" and Beauty Plus has used numerous "EZ" marks on its products in the past, without objection from I&I. *See* Settlement Agreement ¶ 3; Tr. Vol. 2 (ECF No. 300) at 50–51, 68, 73–75.

In addition, I&I has not shown that Beauty Plus acted in bad faith or with a "high degree of culpability" when it infringed I&I's mark through its use of EZ PRE-STRETCHED BRAID. *See Proctor &Gamble*, 280 F.3d at 527. Instead, the evidence suggests that Beauty Plus, which is a larger company and has access to more competitive pricing than Hair Plus, serves primarily as an intermediary between Hair Plus—which sold the infringing products in the United States—and the Chinese manufacturer of the goods bearing the infringing mark; Beauty Plus places orders on behalf of Hair Plus, and then sells the manufactured goods to Hair Plus with a 3% service charge. Tr. Vol. 2 at 77–80. Testimony was presented that Beauty Plus makes no decisions regarding Hair Plus's orders. *Id.* Indeed, testimony was presented that Hair Plus's Vice President, Mr. Lee, singlehandedly made the decision to use the EZ PRE-STRETCHED BRAID mark. Tr. Vol. 3 at 6–7, 39.

Based on the foregoing, the Court concludes that I&I has not established by clear and convincing evidence that this is an exceptional case, and thus I&I's request for attorneys' fees under the Lanham Act is **DENIED.**

### 2. Enhanced Damages

The Lanham Act provides, in relevant part:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.
>
> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. § 1117(a).

As trademark infringement damages, the jury awarded I&I disgorgement of Beauty Plus's profits attributable to the infringement, in the amount of $69,153.00. ECF No. 272. I&I requests that the Court award I&I three times this amount "given Defendants' willful infringement of Plaintiff's EZBRAID mark." ECF No. 275 ¶ 52. I&I further argues that "[u]nder the circumstances and given the procedural history as well as the legal positions taken by Defendants, Defendant Beauty Plus's infringement meets the standard for enhanced damages," pointing to the parties' procedural history. *Id.* ¶ 53.

As discussed, I&I waived the willfulness issue and is now precluded from seeking enhanced damages on that basis. Even if the issue were not waived and jury had found that Beauty Plus's infringement was willful, I&I has not provided any authority or case law indicating that willfulness can justify an award of enhanced damages under § 1117(a). The statute provides that the trebling of actual damages is intended to compensate the plaintiff, and not be a penalty. *See* 15 U.S.C. § 1117(a); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1127 (5th Cir. 1991) (enhancement of a damages award "could, consistent with the 'principles of equity'[], provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct").

Here, I&I does not explain how alleged willful infringement, the procedural history, or Beauty Plus's legal position justifies an increased compensation award. For example, I&I does not argue or contend that Beauty Plus engaged in conduct that rendered I&I's damage calculations imprecise or that the calculated damages are insufficient to compensate I&I for the damage it sustained from Beauty Plus's infringement. *See, e.g.*, *Taco Cabana*, 932 F.2d at 1127 (upholding district court's enhancement based on "information obstruction" by the accused

infringer). Instead, I&I's arguments seem to be directed at penalizing Beauty Plus for its litigation conduct or alleged, but waived, willfulness, which is not permitted under § 1117(a).

In addition, the enhanced damages requested—trebling of Beauty Plus's profits—are unavailable under the statute, which distinguishes between "defendant's profits" and "damages sustained by the plaintiff," and only describes awarding three times plaintiff's <u>actual damages</u> as enhanced damages, not defendant's profits. 35 U.S.C. § 1117(a). As compensation for its trademark infringement claim, I&I sought only disgorgement of Beauty Plus's profits, and did not seek or ask the jury to award its actual damages. I&I provides no caselaw or authority indicating that a defendant's profits and a plaintiff's actual damages are interchangeable for purposes of § 1117(a). On the contrary, other portions of § 1117 support the conclusion that the trebling of "actual damages" in § 1117(a) refers exclusively to plaintiff's damages, and does not also encompass defendant's profits. *See, e.g.*, 15 U.S.C. § 1117(b) (providing, in the case of counterfeit marks, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times <u>such profits or damages</u>, whichever amount is greater" (emphasis added)); *see also Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816, 824 (5th Cir. 1998) (comparing § 1117(a) and § 1117(b)). Here, the jury made no finding of Plaintiff's actual damages—be it in the form of lost profits or some other cognizable damages—suffered in connection with its trademark infringement claim.

Admittedly, § 1117(a) provides that the Court can adjust "the amount of the recovery based on profits"—*i.e.*, a defendant's profits—if it finds that such recovery "is either inadequate or excessive." However, I&I has neither shown nor argued that the disgorgement of Beauty Plus's profits awarded by the jury is inadequate or excessive, and as such, this provision is inapplicable.

Based on the foregoing, the Court concludes that because I&I only sought Beauty Plus's profits in connection with its trademark infringement claim, not its own actual damages, there is no basis to treble the $69,153.00 jury award under § 1117(a). As a result, the Court declines to award enhanced trademark damages, and I&I's request to that effect is **DENIED.**

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial, and **DENIES** Plaintiff's Motion for Entry of Findings of Fact and Conclusions of Law. The Court will enter a Judgment consistent with this Opinion.

**SO ORDERED**.

February 22, 2024.

BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE